Case No. 16-1092, -1172

## UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

## IN RE: AFFINITY LABS OF TEXAS, LLC

*Patent Owner-Appellant*

On Appeal from the United States Patent and Trademark Office,
Patent and Trademark Appeal Board,
Appeal Nos. 2015-004281 and 2015-006122

## OPENING BRIEF FOR APPELLANT
## AFFINITY LABS OF TEXAS, LLC

Ryan M. Schultz
William E. Manske
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402-2015
Tel.: (612) 349-8500

*Attorneys for Patent Owner-Appellant*
*Affinity Labs of Texas, LLC*

January 25, 2016

# CERTIFICATE OF INTEREST

FORM 9.  Certificate of Interest

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Affinity Labs of Texas, LLC      **v.**      Apple Inc.

Case No.      16-1092

### CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)

Affinity Labs of Texas, LLC      certifies the following (use "None" if applicable; use extra sheets if necessary):

1.      The full name of every party or amicus represented by me is:

Affinity Labs of Texas, LLC

2.      The name of the real party in interest (Please only include any real party in interest NOT identified in Question 3. below) represented by me is:

The party named in the caption is the real party in interest.

3.      All parent corporations and any publicly held companies that own 10 percent of the stock of the party or amicus curiae represented by me are listed below. (Please list each party or amicus curiae represented with the parent or publicly held company that owns 10 percent or more so they are distinguished separately.)

None

4.  ☒   The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court (and who have not or will not enter an appearance in this case) are:

Robins Kaplan LLP: Ryan M. Schultz; William E. Manske
Trop, Pruner & Hu, P.C.: Mark Rozman Trop; Timothy G. Newman

| 11/3/2015 | /s/ Ryan M. Schultz |
|---|---|
| Date | Signature of counsel |

Please Note: All questions must be answered

| | Ryan M. Schultz |
|---|---|
| cc:    Counsel of record | Printed name of counsel |

Reset Fields

i

# **TABLE OF CONTENTS**

**Page**

STATEMENT OF RELATED CASES ...............................................................1

STATEMENT WITH RESPECT TO ORAL ARGUMENT...........................2

JURISDICTIONAL STATEMENT .................................................................2

STATEMENT OF THE ISSUES......................................................................3

STATEMENT OF THE CASE..........................................................................3

I.    The Subject Matter of the '833 Patent .................................................3

II.   District Court Proceedings...................................................................7

    A.    *Affinity Labs v. BMW North America, LLC et al.* ....................7

    B.    *Affinity Labs v. Apple, Inc.*........................................................8

III.  Reexamination Proceedings..................................................................8

    A.    Three reexaminations were ordered against claims of the '833 patent. ....................................................................................8

    B.    The PTO severed the '1223 proceeding following resolution of the *BMW* litigation..............................................................9

    C.    Affinity Labs timely appealed the Examiner's rejections to the Board................................................................................ 11

IV.   The Prior Art ...................................................................................... 12

    A.    Dwyer ...................................................................................... 12

    B.    Hahm....................................................................................... 13

    C.    Gioscia..................................................................................... 15

    D.    Naim ....................................................................................... 17

    E.    Lee........................................................................................... 18

SUMMARY OF ARGUMENT...................................................................... 19

STANDARDS OF REVIEW ............................................................. 22

ARGUMENT ..................................................................................... 23

I.    All Merged Reexamination Proceedings were Improperly Maintained Following a Final Decision in the *BMW* Litigation. ............. 23

II.   The Board Relied upon an Improper Claim Construction in Affirming the Examiner's Rejections over Gioscia. ................................. 27

      A.   The Board erred in construing claims 1 and 17 of the '833 patent such that the claims do not require a system having two displays. ........................................................................ 28

      B.   Gioscia does not disclose a "different electronic device" capable of "displaying" a representation of a graphical interface item on an "associated display." .......................................... 31

III.  The Board Erred in its Analysis of the Hahm Reference. ...................... 35

      A.   Hahm does not disclose "software saved at the portable electronic device" capable of facilitating the functionality of claims 1 and 17. ................................................................. 35

IV.   The Board Erred in its Analysis of the Dwyer Reference. ..................... 37

      A.   Dwyer does not inherently disclose "a plurality of preprogrammed soft buttons that are linked to respective audio information sources." ............................................. 38

      B.   Dwyer does not inherently disclose an icon compromising a name. ..................................................................... 40

V.    The Board Erred in its Analysis of the Naim and Lee References. ........ 43

      A.   Neither Naim nor Lee disclose a portable electronic device configured to display a graphical interface item comprising a name. ..................................................................... 44

      B.   The proposed combination of Naim and Lee does not disclose a "portable electronic device" with the claimed "physical interface." .......................................................... 45

C.     The Board erred in disregarding Affinity Labs' evidence of
       commercial success............................................................................. 47

CONCLUSION AND RELIEF SOUGHT ....................................................... 49

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Display Sys., Inc. v. Kent State Univ.*,
  212 F.3d 1272 (Fed. Cir. 2000) ................................................................. 37

*Affinity Labs of Texas, LLC v. Apple, Inc.*,
  Case No. 4:09-cv-04436 (N.D. Cal.) ....................................................... 7, 8

*Affinity Labs v. BMW North America, LLC, et al.*
  Case No. 9:08-cv-00164 (E.D. Tex.) ............... 7, 9, 10, 20, 23, 24, 25, 26, 49

*Apple Inc. v. ITC*,
  725 F.3d 1356 (Fed. Cir. 2013) ............................................................ 43, 47

*Cont'l Can Co. v. Monsanto Co.*,
  948 F.2d 1264 (Fed. Cir. 1991) ............................................................ 47, 48

*Ex Parte Levy*,
  17 U.S.P.Q.2d 1461 (Bd. Pat. App. & Inter. 1990) ..................................... 37

*Finisar Corp. v. DirecTV Grp., Inc.*,
  523 F.3d 1323 (Fed. Cir. 2008) ................................................................. 22

*Function Media, L.L.C. v. Kappos*,
  508 Fed. Appx. 953 (Fed. Cir. 2013) ........................................................ 24

*Graham v. John Deere Co.*,
  383 U.S. 1 (1966) .................................................................................. 22, 43

*Hockerson-Halberstadt, Inc. v. Converse Inc.*,
  183 F.3d 1369 (Fed. Cir. 1999) ............................................................ 27, 36

*In re Antor Media Corp.*,
  689 F.3d 1282 (Fed. Cir. 2012) ................................................................. 21

*In re Elsner*,
  381 F.3d 1125 (Fed. Cir. 2004) ............................................................ 21, 22

*In re Gleave*,
  560 F.3d 1331 (Fed. Cir. 2009) ................................................................. 21

*In re Kao,*
  639 F.3d 1057 (Fed. Cir. 2011) ................................................... 43, 47

*In re NTP, Inc.,*
  654 F.3d 1279 (Fed. Cir. 2011) ................................................... 22, 26

*In re Oelrich,*
  666 F.2d 578 (CCPA 1981) ........................................... 33, 37, 39, 42

*In re Sernaker,*
  702 F.2d 989 (Fed. Cir. 1983) ............................................................48

*J.T. Eaton & Co. v. Atlantic Paste & Glue Co.,*
  106 F.3d 1563 (Fed. Cir. 1997) ........................................................47

*KSR Int'l Co. v. Teleflex Inc.,*
  550 U.S. 398 (2007) .........................................................................43

*Leo Pharm. Prods. Ltd. v. Rea,*
  726 F.3d 1346 (Fed. Cir. 2013) ................................................... 43, 47

*Microsoft Corp. v. Proxyconn, Inc.,*
  789 F.3d 1292 (Fed. Cir. 2015) ................................................... 23, 27

*Phillips v. AWH Corp.,*
  415 F.3d 1303 (Fed. Cir. 2005) (en banc) .................................. 26, 27

*Stumbo v. Eastman Outdoors, Inc.,*
  508 F.3d 1358 (Fed. Cir. 2007) ........................................................46

*Teva Pharmaceuticals U.S.A., Inc. v. Sandoz, Inc.,*
  135 S. Ct. 831, 190 L. Ed. 2d 719 (2015) .................................. 22, 23

*Tex. Instr. Inc. v. U.S. Int'l Trade Comm'n,*
  988 F.2d 1165 (Fed. Cir. 1993) ........................................................27

*Trintec Indus., Inc. v. Top-U.S.A. Corp.,*
  295 F.3d 1292 (Fed. Cir. 2002) ................................................... 32, 41

## Statutes

28 U.S.C. § 1295(a)(4)(A) .....................................................................2

35 U.S.C. 317(b)...................................................................................9

vi

35 U.S.C. § 103 ..................................................................................42

35 U.S.C. § 134 (b) ...............................................................................2

35 U.S.C. § 141(b) ................................................................................2

35 U.S.C. § 314(b)(2) ..........................................................................25

35 U.S.C. § 317 .............................................................................. 3, 25

35 U.S.C. § 317(b) ................................................................ 10, 20, 23, 24

**Rules**

Federal Rule of Appellate Procedure 34(a) ...........................................2

Federal Rule of Appellate Procedure 34(a)(2) .....................................2

Local Rule 47.5 .....................................................................................1

**Other Authorities**

Manual of Patent Examining Procedure..............................................24

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, counsel for Appellant, Affinity Labs of Texas, LLC ("Affinity Labs"), states as follows:

(a)    No other appeal in or from the same proceeding was previously before this or any other appellate court; and

(b)    Affinity Labs is not aware of any cases pending in this court that will directly affect or be directly affected by this Court's decision on this appeal. Affinity Labs has appealed the Board's Decision on Appeal in Reexamination Control No. 95/001,266 involving related U.S. Patent No. 7,440,772. Affinity Labs has also appealed the Final Written Decision in IPR2014-00209 and joined proceeding IPR2014-00212, which may be impacted by this Court's decision because the proceedings involve related U.S. Patent No. 7,953,390. Five additional pending *inter partes* review proceedings may be impacted by this Court's decision—IPR2014-01181, IPR2014-01182, and IPR2014-01184, which involve related U.S. Patent No. 8,532,641; and IPR2014-00408 and IPR2014-00409, which involve related U.S. Patent No. 8,359,007.

**STATEMENT WITH RESPECT TO ORAL ARGUMENT**

Pursuant to Federal Rule of Appellate Procedure 34(a), Affinity Labs respectfully requests oral argument in this matter. Oral argument is appropriate because this matter meets the standards of Rule 34(a)(2) for oral argument, in that (a) this appeal is not frivolous, (b) the dispositive issues raised in this appeal have not been recently and authoritatively decided, and (c) in addition to the parties' respective briefs, the decisional process would be significantly aided by oral argument.

**JURISDICTIONAL STATEMENT**

The Patent Trial and Appeal Board (the "Board") of the USPTO derives its jurisdiction over the reexaminations of the patent-in-suit, U.S. Patent No. 7,324,833 (the "'833 patent"), from 35 U.S.C. § 134 (b). This appeal pertains to three reexaminations:

- *Ex Parte* Reexamination Control No. 90/010,333
- *Inter Partes* Reexamination Control No. 95/001,223
- *Inter Partes* Reexamination Control No. 95/001,264

The Board issued final Decisions on Appeal on June 30, 2015 and August 26, 2015, which disposed of all parties' claims. Appx1-13; Appx14-Appx24. On August 26, 2015 and September 28, 2015, Affinity Labs timely filed its Notices of Appeal with this Court. *See* Dkt. No. 1, Case Nos. 16-1092; Dkt. No. 2 Case No. 16-1172. This Court has jurisdiction under 35 U.S.C. § 141(b) and 28 U.S.C. §§ 1295(a)(4)(A). On Affinity Labs' Motion, the Court consolidated the co-pending appeals of the

above reexamination decisions under the instant case caption. Dkt. No. 10, Case No. 16-1092.

## STATEMENT OF THE ISSUES

1.      Whether the reexamination proceedings involving the '833 patent were properly maintained under 35 U.S.C. § 317 following a final decision in related District Court litigation adverse to third party requester, Volkswagen Group of Americas, Inc.

2.      Whether the Board erred in affirming the Examiner's claim rejections over the cited references.

## STATEMENT OF THE CASE

This is an appeal of the Board's June 30, 2015 decision in merged *Inter Partes* Reexamination Control Nos. 95/001,264 and 90/010,333 and the Board's August 26, 2015 decision in Reexamination Control No. 95/001,223. Facts relevant to this appeal are identified below.

### I.    The Subject Matter of the '833 Patent

The '833 patent is entitled, "System and Method for Connecting a Portable Audio Player to an Automobile Sound System." The '833 patent is a continuation in a chain of patents with a priority date of March 28, 2000. Appx18868. In 2000, at the time the inventors filed the specification that led to the '833 patent, the audio landscape looked very different than it does now. A user seeking to listen to personalized music choices had only limited and problematic options. This was

particularly true if a user wanted to play audio files stored on a computer on a different electronic device with its own speakers, such as a car stereo system.

Portable MP3 players, which in 2000 had only recently been introduced, served as one possible way of listening to individualized audio content. However, because there was no way to communicate between the car stereo system and the MP3 player, the user could not select music for playback other than on the controls and display of the MP3 player itself. Consequently, at the time of the invention, there was a clear problem—how to play and control audio content stored on a portable device on a separate sound system—in need of a solution.

The '833 patent describes a unique system for content delivery, including, for example, delivery of songs, video, on-line radio stations, on-line broadcasts, or text. *See* Appx18868. In this system, one electronic device (in one embodiment, a car audio system) works with a separate portable media player (for example, a personal digital assistant (PDA) or a cellular phone) and allows a user to select and receive media content. Appx18879 (2:45-64).[1] The invention described and claimed by the '833 patent represented a novel, non-obvious solution to problems posed by portable media player systems existing at the time of invention.

---

[1] Where Appellant cites to a patent included in the Appendix (e.g., Appx18879) followed by a parenthetical (e.g., 2:45-64), the numbers denote the relevant column (2) and line numbers (45-64) of the patent reference.

As disclosed in the specification of the '833 patent, the claimed portable audio media player is capable of connecting to a sound system and playing audio through that sound system based upon a user's selection of an icon on the sound system. *See* Appx18887 (17:38-67). A user can connect a portable audio file player, such as an MP3 player or PDA, to a personal computer and download audio files. *See* Appx18880 (3:21-34) (4:17-31). When the portable audio file player is connected to a different electronic device, it provides a representation of the selectable icon to the different electronic device. *See* Appx18884 (11:28-44). When a user selects this icon on the different electronic device, it causes the portable audio player to start playing the audio.

The specification provides different examples of two-device systems that work in this fashion. In one embodiment, the different electronic device is a car stereo system. As shown in Figure 9 of the '833 patent, below, the portable audio file player (907) can be communicatively coupled to a car's audio system, allowing a user to play content from the portable audio player through the car's audio system. Appx18878.



**FIG. 9**

When the portable audio file player is connected to the different electronic device, a user can select and play audio content through that different electronic device. Thus, for example, a user can select audio content located on the portable device through an automobile sound system and have that audio content played back through the automobile sound system. Appx18887 (17:38-67).

The claims of the '833 patent are directed to systems and methods that allow the second electronic device to display a menu of the titles associated with the media files stored on the portable device. *See* Appx38-43; Appx18887-18888. The two devices work together and allow "soft buttons" to be displayed on the second device such that a user may navigate through a graphical user interface ("GUI") on the second device to select and play media files on the portable device. *Id.* Through this interconnected system of devices, the inventors of the '833 patent described and

claimed a highly effective and novel manner of managing and playing audio content across different devices.

## II.   District Court Proceedings

### A.   *Affinity Labs v. BMW North America, LLC et al.*

On August 27, 2008, Affinity Labs filed suit against Volkswagen Group of Americas, Inc. ("Volkswagen") for infringement of the '833 patent (hereinafter, the "*BMW* litigation").[2] On November 20, 2008, Volkswagen answered Affinity Lab's complaint, alleging that the '833 patent was invalid on multiple grounds. A16799-16845. Shortly after being sued, Volkswagen filed a request for *inter partes* reexamination of the '833 patent.

The *BMW* litigation proceeded to trial, with Volkswagen as one of two defendants. In October 2010, the jury returned a verdict that Volkswagen infringed claims 28 and 35 of the '833 patent. Appx16848-16863. The jury also found the '833 patent valid over several invalidity arguments. Appx16859-16860. Volkswagen initially appealed the verdict, but dismissed its appeal in June 2012 following settlement. Appx16871-16872. On June 14, 2012, Volkswagen filed a notice of non-participation in the reexamination proceedings which form the subject of this appeal. Appx15828.

---

[2] *Affinity Labs v. BMW North America, LLC, et al.* Case No. 9:08-cv-00164 (E.D. Tex.). The suit originally involved other defendants, as well as U.S. Patent No. 7,634,228 ("the '228 patent").

### B.    *Affinity Labs v. Apple, Inc.*

On March 24, 2009, Affinity Labs filed suit against Apple, Inc. ("Apple") on a series of patents, including U.S. Patent No. 7,187,947 to which the '833 patent claims priority.[3] On November 13, 2009, Apple filed a request for *inter partes* review of the '833 patent. Appx4254; Appx16791. On September 23, 2011, the litigation was dismissed pursuant to joint stipulation of the parties. Appx16791; Appx16876-16877; Appx17916-17918. On October 3, 2011, Apple filed a notice of non-participation in the reexamination proceedings which form the subject of this appeal. Appx16879.

## III.  Reexamination Proceedings

### A.    Three reexaminations were ordered against claims of the '833 patent.

On November 7, 2008 a request for *ex parte* reexamination of all claims of the '833 patent was filed by a third party requester. That request was assigned control number 90/010,333 (hereinafter, the "'0333 proceeding"). *Ex parte* reexamination was ordered on all claims of the '833 patent in the '0333 proceeding on December 19, 2008. Appx179-186.

On September 22, 2009, a first request for *inter partes* reexamination of all claims in the '833 was filed by a third party requester, Volkswagen. The request was assigned control number 95/001,223 (hereinafter, the "'1223 proceeding"), and reexamination was ordered on November 9, 2009. Appx12003-12046.

---

[3] *Affinity Labs of Texas, LLC v. Apple, Inc.*, Case No. 4:09-cv-04436 (N.D. Cal.) The case was transferred from the Eastern District of Texas on August 25, 2009.

On November 13, 2009, a second request for *inter partes* reexamination of all claims in the '833 patent was filed by another third party requester, Apple, Inc. The request was assigned control number 95/001,264 (hereinafter, the "'1264 proceeding") and reexamination was ordered on February 5, 2010. Appx5639-5678.

On June 14, 2010, the PTO merged the '0333, '1223, and '1264 reexamination proceedings into one proceeding via *sua sponte* order. Appx12202-12213.

**B.    The PTO severed the '1223 proceeding following resolution of the *BMW* litigation.**

After Volkswagen dismissed its appeal following settlement of the *BMW* litigation, Affinity Labs informed the PTO of the District Court's final decision on validity. On June 13, 2012 and January 31, 2013, Affinity Labs petitioned the PTO to terminate the then-merged *inter partes* reexamination proceedings. Appx15823-15824; Appx16789-16795. In support of its petitions to terminate, Affinity Labs submitted the Jury Verdict Form and Final Judgement from the *BMW* litigation, as well as Volkswagen's last Answer. Appx16848-16863; Appx16865-16868; Appx16799-16845. Volkswagen's last Answer alleged invalidity of the '833 patent based upon no fewer than forty different references, including nearly all of the references at issue in this appeal. Appx16808-16811.

Instead of terminating the proceeding as required by statute, on February 22, 2013, the PTO severed the '1223 proceeding from the merged reexamination, holding that "[t]he estoppel provisions of pre-AIA 35 U.S.C. § 317(b) apply to any rejection in

[the '1223 proceeding] of any of claims 28-35, 48, and 49 of [the '833 patent]."
Appx16890-16904. In so holding, the PTO acknowledged that "the district court's
judgment was final, i.e., after all appeals" and constituted a final decision under
Section 317(b). Appx16897-16898. Still, the PTO declined to terminate the '1223
proceeding in its entirety because: (1) the Jury Verdict Form showed only that "the
requester did not sustain its burden of proving invalidity of claims 28 and 35 of the
'833 patent; and (2) Volkswagen's Answer did not demonstrate that "*all* of the issues
raised in the merged reexamination proceeding [were] the same issues that were raised
or could have been raised" by Volkswagen in the *BMW* litigation. Appx16899.

On August 15, 2013, the Examiner mailed a Right of Appeal notice in the
severed '1223 proceeding. Appx16905-Appx16951. On September 17, 2013, the
Examiner mailed a Right of Appeal notice in the merged '1264/'0333 proceedings.
Appx10632-0690. A chart of the above-described reexamination proceedings is set
forth below:



### C.  **Affinity Labs timely appealed the Examiner's rejections to the Board.**

Affinity Labs timely appealed the following Examiner rejections, as set forth in the respective Right of Appeal Notices, to the Board:

#### Appeal 2015-004281 (merged '1264/'0333 proceedings)

1.) Claims 1, 2, 6, 9, 13, 14, 16, 17, 21, 23, and 27 under § 102(a) and § 102(e) over U.S. Patent No. 6,671,657 to Dwyer.

2.) Claims 1-26, 37-42, 45, and 46 under § 103(a) over combinations involving U.S. Patent No. 6,694,200 to Naim and U.S. Patent No. 6,728,531 to Lee.

#### Appeal 2015-006122 (severed '1223 proceeding)

1.) Claims 1-2, 8-11, 13-14, 16-17, 23, 25-27 under § 102(a) and § 102(e) over European Patent Application No. EP 0 982 732 to Hahm.

2.) Claims 1-3, 5, 8-17, 19-20, 22-25, 27 under § 102(b) and § 102(e) over U.S. Patent No. 6,407,750 to Gioscia.

11

On June 30, 2015, the Board issued a decision in Appeal 2015-004281 (merged '1264/'0333 proceeding), affirming the challenged claim rejections. Appx1-13. On August 26, 2015, the Board issued a decision in Appeal 2015-006122 (severed '1223 proceeding), affirming the challenged claim rejections. Appx14-Appx24. These decisions form the subject of the instant appeal.

## IV. The Prior Art

### A. Dwyer

U.S. Patent No. 6,671,657 to Dwyer (hereinafter, "Dwyer") is entitled "Voice File Management in Portable Digital Audio Recorder." Dwyer generally relates to the field of portable digital recorders and the "interaction between a portable digital recorder and a personal computer." Appx18794 (1:36-38).

Below is a block diagram illustrating the structure of Dwyer's voice data management system (10), including portable digital voice recorder (12) resting on docking station (14), PC (16) having display (18), keyboard (20), and mouse (22), and cable (15) that connects docking station (14) to PC (16). *See* Appx18784, Appx18795 (1:15-42). Voice data management system (10) further includes local area network (LAN) (24) providing data communication between PC (16), central dictation system (28), voice mail system (26), other PCs and a network server:

12



Dwyer discloses a portable digital voice recorder/player capable of interfacing with a personal computer, in which the voice data files have header data containing "status" information about the file. Appx18782; Appx18789. In addition to the upload status of the file, the header may also contain other information, such as time/date stamp, length, folder, author and priority. Appx18789. The only data transfer mode taught by the Dwyer is that of a batch upload, in which many files are uploaded in a sequence. The sequence of the upload may be determined by the priority information in the file header. Appx18796 (6:36-67).

**B.    Hahm**

European Patent Application No. EP 0 982 732 A1 to Hahm (hereinafter, "Hahm"), entitled "Portable MP3 player having various functions," discloses an "MP3 player and its data providing system." Appx18801. Figure 2 of Hahm shows a main menu (202) of such a "data providing system" or "management system," which is

separately installed on a PC and designed to interface with the disclosed MP3 player. Appx18803 (4:5-10), Appx18804 (5:4-33); Appx18812. As shown in Figure 2, below, the "management system" has two windows: "a first window (214) showing directory information of computer (200) in a left side and second window (216) showing file information of MP3 player (300) in a right side."



FIG. 2

Figure 2 further shows two "move buttons" over windows (214) and (216), which appear to be present at all times: "a first move button (218) for downloading selected files" from the computer to the MP3 player, and a "second move button (220) for uploading a file" stored on the MP3 player to the computer. *Id.*

14

In the preferred embodiment, Hahm teaches that the management program is already "installed in the computer." Appx18803 (4:41-44). "Figure 2 shows a main menu (202) of the management program displayed on a monitor of computer (200) when the management program is running after an installation[.]" Appx18803 (4:56-5:3).

### C.    Gioscia

U.S. Patent No. 6,407,750 to Gioscia (hereinafter, "Gioscia"), entitled "Broadcast and Recorded Music Management System Particularly for use in Automobile" discloses an "audio management system for managing broadcast and recorded audio works." Appx18830. The system includes a programming guide unit for receiving radio broadcasts and a media manager unit, controlled by the guide unit. Appx18832 (2:43-50). Below is a block diagram illustrating the structure of the claimed invention, including Entertainment Programing Guide Unit (100) having Graphical User Interface (101) and antenna (102); and Media Manager Unit (104) having Media Deck (105), Digital memory Unit (106), processor (107), User Input Device (108), and wireless transceiver (109). *See* Appx18830-18831, Appx18833 (3:1-4:43).



**Figure**

While Gioscia does consist of two components that may be separated, the two components are designed to operate as a single entity. When used in an automobile, Gioscia discloses that the audio management system is designed for permanent installation, *e.g.*, the programming guide unit in the control console or dashboard and the media manager unit in the trunk or under a seat. Appx18832 (2:31-38); Appx18833 (3:12-15). Though Gioscia discloses a graphical user interface (101) on the Entertainment Programming Guide Unit, there is no similar interface on the Media Manager Unit (104). As explained in Gioscia, the Media Manager Unit is "generally controlled by the user interface (101) of the Programming Guide Unit." Appx18833 (3:59-4:23).

**D.    Naim**

U.S. Patent No. 6,694,200 to Naim, entitled "Hard Disk Portable Device,"
generally relates to the field of portable digital devices. Appx18836. Naim applies to a
portable digital device having a battery operated conventional hard drive to
accommodate the demand for high capacity digital data storage including text, audio,
images, and video files. *See id.*

One embodiment of Naim separates the portable digital device into two
discrete units. According to the Naim,

> To improve the portability of the device, it can be designed
> as two independent parts including the hard drive unit and
> the player unit.  This allows the player unit to be detached
> and carried separately from the hard drive unit once the
> player on-board memory has been loaded with data for a
> period of playtime.

Appx18845 (2:57-62).

Another embodiment of Naim describes downloading data from an external
communications device.

> In another embodiment, the present invention includes a
> method of downloading data to a portable handheld device
> having a dedicated hard drive and player.  The method for
> downloading data includes coupling the portable handheld
> device to an external communications device, selecting one
> or more data and program files for download, downloading
> the selected data and program files from the external
> communications device to the portable device, and storing
> the downloaded data and program files in a disk storage
> medium of the hard disk of the portable device.

Appx18846 (3:57-63).

Naim further discloses the implementation of file descriptions in the non-volatile memory of the player. According to Naim,

> In another embodiment, file descriptions, such as the name of song titles or image descriptions, are collectively transferred to the non-volatile memory of the player. In this manner, the selection, organization, and other manipulations of the files can be accomplished without accessing and running the hard disk.

Appx18846 (3:64-4:2).

Naim does not disclose communicating a collection of information from the portable electronic device to a second device other than to say that usage data and recordings can be uploaded to a computer. Additionally, Naim fails to disclose displaying at least a partial representation of the received information on the associated display of the (different) electronic device.

### E.    Lee

U.S. Patent No. 6,728,531 entitled "Method and Apparatus for Remotely Configuring a Wireless Communication Device," discloses an Internet radio system that can be incorporated into a car. Appx18853. The object of the invention disclosed in Lee is to "allow any AM, FM, TV audio or digital audio broadcast or any Internet audio broadcast to be easily selected by format (i.e., country, classical, news, rock, talk, etc.) in a vehicle" such that a user does not need to know the band or frequency of any station to select a broadcast. Appx18861 (6:42-51). A user controls this system via

the multimedia device, which "makes the appropriate band and frequency selection when a listener selects a station hierarchically organized under a format category." *Id.*

Lee contemplates that a cellular telephone may function as a "remote programmable device." Appx18864 (12:40-44). "From a remote programmable device 40, a user can customize the way audio broadcasts and personal information service channels are organized in the vehicle's multimedia device," though "[c]onfiguration data is preferably sent to the multimedia device through a computer with an Internet connection[.]" Appx18861 (6:27-30); Appx18864 (12:23-25). The "remote programmable device" disclosed by Lee is used instead "to download information from the Internet gateway network to the multimedia device in the vehicle." Appx18861 (6:23-26). Beyond describing the above function of the "remote programmable device," Lee is entirely devoid of any physical description of the device.

## SUMMARY OF ARGUMENT

The '833 patent, which stands rejected by the Board, describes a two-device system for transferring and playing music. The system involves two devices—a portable electronic device and a different electronic device—each having a display. When linked with a portable device, the associated device (for example, an automobile stereo system), is configured such that a user may view a graphical representation of the portable device's user interface. The claims of the '833 patent set forth additional requirements for the claimed user interface that are relevant to this appeal. For

instance, the user interface must display a graphical item compromising a name. The user interface must further include "soft buttons" linked to audio sources, which is functionality derived from software found on the portable device. While audio systems with these features are ubiquitous in today's world, they were nowhere until conceived by Russell White and Kevin Imes in 2000.

The instant appeal involves two Board decisions upholding invalidity determinations in three reexamination proceedings concerning the '833 patent. As set forth below, the Board erred in its analysis of the Examiner's determinations for at least three reasons.

First, as a procedural matter, the Examiner's determinations in all three reexaminations should be discarded and the proceeding remanded for formal termination. Under the estoppel provisions governing reexamination proceedings, all three reexaminations should have been terminated upon Affinity Labs' petition, which followed resolution of all related District Court matters. The plain language of 35 U.S.C. § 317(b) states that a losing infringer at trial cannot maintain an *inter partes* reexamination "on the basis of issues which that party ... raised or could have raised" at trial. The record across the three reexaminations, including Affinity Labs' petition for termination and subsequent arguments before the Board, demonstrates that the invalidity arguments advanced by the Examiner were raised or could have been raised by requester Volkswagen during the course of the *BMW* litigation. Moreover, at the time of the final decision reached in the *BMW* litigation all three reexaminations were

merged. The Board therefore committed legal error by only severing the '1223 proceeding instead of terminating the entire reexamination.

Second, the Board erred by sustaining Examiner rejections based upon claim constructions that are neither reasonable nor consistent with the subject matter and claims set out in the '833 patent. As set forth below, the Examiner's analysis of the Gioscia reference is dependent upon a selective and unsupported reading of key claim limitations. Indeed, the Examiner wholly ignores the limitation that the claimed portable electronic device and the associated different electronic device both have displays.

Third, the Board committed further error in is review of the Examiner's substantive invalidity analysis. In sustaining the Examiner's rejections, the Board countenanced readings of the references and invalidity determinations that are not supported by substantial evidence. In actuality, the art relied upon by the Examiner does not disclose critical limitations of the '833 patent's independent claims—features that are neither explicitly nor inherently present, and features that an ordinarily skilled artisan would not have found obvious to add. With respect to obviousness, Affinity Labs presented powerful evidence of secondary considerations showing nonobviousness, which was improperly dismissed by both the Examiner and the Board. This evidence should have been considered by the Board, and further demonstrates the nonobviousness of the claimed invention.

## STANDARDS OF REVIEW

The Federal Circuit reviews the Board's legal conclusions de novo. *In re Antor Media Corp.*, 689 F.3d 1282, 1287 (Fed. Cir. 2012) (citing *In re Elsner*, 381 F.3d 1125, 1127 (Fed. Cir. 2004)). The factual findings underlying those determinations are reviewed for substantial evidence. *Id.* (citation omitted). A finding is supported by substantial evidence if a reasonable mind might accept the evidence to support the finding. *Id.* (citation omitted).

Anticipation is a question of fact reviewed for substantial evidence, including whether an element is inherent in the prior art. *In re Gleave*, 560 F.3d 1331, 1335 (Fed. Cir. 2009) (citation omitted). The claimed invention is anticipated by a reference only when its disclosure is such that "a skilled artisan could take its teachings in combination with his own knowledge of the particular art and be in possession of the invention." *In re Elsner*, 381 F.3d at 1130 (italics in original).

Obviousness is a question of law based on underlying factual findings. *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966). Such factual findings include: (1) the scope and content of the prior art; (2) the differences between the claimed invention and the prior art; (3) the level of ordinary skill in the pertinent art; and (4) evidence of secondary factors, such as commercial success, long-felt but unsolved needs, and failure of others. *Id.* The Board's findings pertaining to secondary considerations of obviousness are reviewed for substantial evidence. *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1339 (Fed. Cir. 2008).

22

In patent reexamination, claims "are to be given their broadest reasonable interpretation consistent with the specification," and claim language "should be read in light of the specification as it would be interpreted by one of ordinary skill in the art." *In re NTP, Inc.*, 654 F.3d 1279, 1287 (Fed. Cir. 2011) (citation omitted). While the Board must give the terms their broadest reasonable construction, "the construction cannot be divorced from the specification and the record evidence." *Id.* at 1288 (citation omitted). In *Teva Pharmaceuticals U.S.A., Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 190 L. Ed. 2d 719 (2015), the Supreme Court clarified the standards of review for claim construction. Pursuant to *Teva's* framework, the Federal Circuit reviews the Board's ultimate claim constructions *de novo* and its underlying factual determinations involving extrinsic evidence for substantial evidence. *Microsoft Corp. v. Proxyconn, Inc.*, 789 F.3d 1292, 1297 (Fed. Cir. 2015) (citing *Teva*, 135 S. Ct. at 841-42).

## ARGUMENT

## I.     All Merged Reexamination Proceedings were Improperly Maintained Following a Final Decision in the *BMW* Litigation.

As an initial and dispositive matter, pre-AIA 35 U.S.C. § 317(b) bars the claim rejections affirmed by the Board in all three reexamination proceedings. Section 317(b) treats later-filed *inter partes* reexaminations (those filed after a final judicial decision) and previously-filed *inter partes* reexamination (those filed prior to the final judicial decision) differently. Where, as here, there is a "previously-filed" *inter partes* reexamination in process and a requester fails to sustain its burden of proving the

invalidity of any claim in suit, that party's *inter partes* reexamination "may not thereafter be maintained." Per Section 317 (b),

> once a final decision has been entered against a party in a civil action arising in whole or in part under § 1338 of title 28, that the party has not sustained its burden of proving the invalidity of any patent claim in suit or if a final decision in an *inter partes* reexamination proceeding instituted by a third-party requester is favorable to the patentability of any original or proposed amended or new claim of the patent, then neither that party nor its privies may thereafter request an inter partes reexamination of any such patent claim on the basis of issues which that party or its privies raised or could have raised in such civil action or inter partes reexamination proceeding, and an inter partes reexamination requested by that party or its privies on the basis of such issues may not *thereafter be maintained* by the Office, notwithstanding any other provision of this chapter …

35 U.S.C. § 317(b)(emphasis added).

The prohibition against maintaining a reexamination is not limited to any specific claim, but rather applies to the entire patent. The statute's language is clear. A losing infringer at trial cannot maintain an *inter partes* reexamination "on the basis of issues which that party ... raised or could have raised" at trial. The Manual of Patent Examining Procedure echoes this understanding, stating that "an *inter partes* reexamination already requested by that party, or its privies, on the basis of such issues will not be maintained by the Office, *i.e.*, the proceeding will be concluded." M.P.E.P. § 2686.04(V). As this Court has noted, Section 317(b) "existed to prevent duplicative, harassing actions against a patentee. If a defendant brought an invalidity challenge in a district court litigation and was unsuccessful, it is not permitted to bring the same challenge in an inter partes reexamination." *Function Media, L.L.C. v. Kappos*,

508 Fed. Appx. 953, 955-956 (Fed. Cir. 2013).

Here, it cannot be disputed that a final judgment was entered by the District Court in the *BMW* litigation before the PTO entered any decision in the then-merged reexamination proceeding. The PTO confirmed as much in its Decision severing the '1223 proceeding. Appx16897-16898. Volkswagen broadly argued in the *BMW* litigation that "one or more claims of the '833 patent" were invalid as anticipated or obvious over, *inter alia*, Hahm and Gioscia—references upon which the Examiner later based his rejections. Appx16808-16811. As such, Volkswagen raised or could have raised all validity issues concerning the Hahm and Gioscia references in the *BMW* litigation. Thus, it was legal error for the PTO to maintain the '1223 proceeding.

Furthermore, because the final judgment in the *BMW* litigation was rendered *after* the PTO had merged the three reexaminations into a single proceeding, it was improper for the PTO to maintain the '1264 and '0333 proceedings. When the PTO merged the proceedings, it effectively created an *inter partes* review.[4] Both Apple and Volkswagen were permitted to comment on Office Actions and Patent Owner

---

[4] At the time that the PTO was evaluating Affinity Labs' petition to terminate the merged reexamination proceeding, neither Volkswagen nor Apple were participating in the reexamination. Both Volkswagen and Apple had settled their respective disputes with Affinity Labs and filed notices of non-participation in the reexamination. Given the PTO's *de facto* conversion of the proceeding to an *inter partes* review, the parties' settlement of related district court litigation was entitled to weight in the PTO's determination as to whether to terminate the proceeding. *See* post-AIA 35 U.S.C. § 317.

Responses, either of which could have invoked references and argument that were originally only a part of the *ex parte* proceeding. *See* Appx12210 (citing 35 U.S.C. § 314(b)(2)). Indeed, the PTO acknowledged in its Order denying Affinity Labs' petition to terminate that "[a]ny reference applied by the examiner in a rejection in [the] merged proceeding, i.e., any issues raised by the applied rejection, are raised in each reexamination proceeding that is part of the merged proceeding, regardless of which requester originally proposed the rejection, and regardless of whether the rejection was originally raised by the examiner." Appx16898.

The PTO's *sua sponte* merger also ensured that all participating parties were explicitly aware of all the prior art being asserted against the '833 patent. Moreover, following merger of the reexaminations, both Apple and Volkswagen were permitted to argue in support of grounds that were never set out in their original requests for reexamination. In this scenario, the PTO's decision not to terminate the reexamination proceeding upon the final decision in the *BMW* litigation runs counter to the policy goal of preventing duplicative, harassing actions against a patentee.

As such, the PTO's failure to terminate the merged proceeding in its entirety was error. The subsequent Examiner rejections should be reversed and the proceeding remanded for termination.

## II. The Board Relied upon an Improper Claim Construction in Affirming the Examiner's Rejections over Gioscia.

The Board's analysis of Gioscia and its affirmance of the Examiner's rejections results from an erroneous reading of claims 1 and 17 of the '833 patent. As properly construed, Gioscia does not anticipate the '833 patent.

In patent reexamination, claims "are to be given their broadest reasonable interpretation consistent with the specification," and claim language "should be read in light of the specification as it would be interpreted by one of ordinary skill in the art." *In re NTP, Inc.*, 654 F.3d at 1287. Under the PTO's standards, the Board is obligated to construe terms so as to give them their broadest reasonable interpretation consistent with the written description. *Phillips v. AWHCorp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (en banc). However, the Board's ability to construe terms broadly is not unlimited. Three key doctrines limit the Board's constructions. First, all patent limitations must be treated as meaningful, and the Board cannot construe a term so broadly as to read a limitation out of the claim. *See Tex. Instr. Inc. v. U.S. Int'l Trade Comm'n*, 988 F.2d 1165, 1171 (Fed. Cir. 1993). Second, claim terms must be evaluated in the context of the claim as a whole, not in a vacuum. *See Hockerson-Halberstadt, Inc. v. Converse Inc.*, 183 F.3d 1369, 1374 (Fed. Cir. 1999) ("[p]roper claim construction . . . demands interpretation of the entire claim in context, not a single element in isolation"). And finally, the Board's construction must be both reasonable and

consistent with the patent's specification. *Phillips*, 415 F.3d at 1316; *Microsoft Corp.*, 789 F.3d at 1297.

Here, the Board improperly construed key terms of independent claims 1 and 17 of the '833 patent, which lead to an erroneous analysis of the claims against the prior art. In light of this error, the rejections over Gioscia should be reversed.

### A.   The Board erred in construing claims 1 and 17 of the '833 patent such that the claims do not require a system having two displays.

The Board determined that "claims 1 and 17 [of the '833 patent] do not affirmatively recite a system having two displays." Appx21-22. According to the Board, claims 1 and 17 recite only "software for interacting with a different device having a display, and/or communicating information to a second device having a display." *Id.* The Board's reading of claims 1 and 17 is counter to the plain wording of the claims and effectively reads limitations out of the claims.

Claims 1 and 17 of the '833 patent describe a system where one electronic device (in one embodiment, a car audio system) works with a different electronic device, a "portable electronic device" player (for example, a personal digital assistant (PDA) or a cellular phone). As shown below, claim 1 describes "a portable electronic device having a display" and a "different electronic device" having "an associated display" that is capable of "displaying" a representation of a graphical interface item located on the portable electronic device:

What is claimed is:

**1**. An audio system, comprising:

a portable electronic device having a display, a memory, and an audio file player;

a first portion of software saved at the portable electronic device and configured to initiate a displaying of a graphical interface item on the display, the graphical interface item comprising a name associated with an audio file saved in the memory;

a mounting location on the portable electronic device that includes a physical interface configured to communicatively couple the portable electronic device to a different electronic device having an associated display; and

an other portion of software saved at the portable electronic device and configured to communicate a representation of the graphical interface item to the different electronic device via the physical interface to facilitate a displaying of the representation on the associated display, wherein the portable electronic device is configured to communicate interface information to the different electronic device in order to allow a user to view at least a partial representation of a graphical user interface that includes the graphical interface item on the associated display, wherein the graphical user interface comprises a plurality of preprogramed soft buttons that are linked to respective audio information sources.

Appx18887.

Claim 17 further describes the "different electronic device" as having "an associated display" that allows a user to (1) navigate through audio files, (2) view at least a portion of a graphical menu, and (3) select an audio file for processing. Claim 17 is set forth below:

17. An audio system, comprising:
a portable electronic device that has a display, a memory, and a processor;
software saved at the portable electronic device and configured to direct the portable electronic device to save an audio file in the memory, to associate the audio file with a name, to include the name in a graphical menu of available content, to present the name on the display of the portable electronic device, and to communicate a collection of information comprising the name to a different electronic device that has an associated display such that a user can interact with the different electronic device: (1) to navigate through a plurality of audio files; (2) to view at least a portion of the graphical menu on the associated display, wherein the portion comprises the name; and (3) to select an available audio file for processing; and
wherein the portable electronic device is configured to communicate interface information to the different electronic device in order to allow the user to view the graphical menu on the associated display in a graphical user interface that includes a plurality of preprogramed soft buttons that are linked to respective audio information sources.

Appx18888.

The presence of an "associated display" on the "different electronic device" is also evident in Figures 6 and 9 of the '833 patent. For instance, Figure 9, below, shows a portable electronic device (907) and an audio system (901)—a "different electronic device"—with a display.



*FIG. 9*

Appx18878.

The two claimed displays are important claim elements. The portable audio file player's display allows an operator to use the portable audio file player anywhere, while the different electronic device's display gives an operator the ability to access the content of the portable audio file player using the controls and display of a second electronic device, such as a head unit.

**B.    Gioscia does not disclose a "different electronic device" capable of "displaying" a representation of a graphical interface item on an "associated display."**

As explained above, the Board's analysis of Gioscia follows from the erroneous construction that "claims 1 and 17 [of the '833 patent] do not affirmatively recite a system having two displays." Appx21-22. Under a proper construction of the

31

claims—one that credits the requirement of an "associated display" on a second electronic device—Gioscia does not anticipate.

Under the Board's reading of Gioscia, the programming guide unit (100) functions as the "portable electronic device" described in claims 1 and 17 of the '833 patent, while the media manager unit (104) functions as the claimed "different electronic device." *See* Appx22. Gioscia's programming guide unit (100) and media manager unit (104) are shown below.



As the Board explained, "[t]he media manager unit may include a second user interface, and the media manger unit 'is controlled by the programming guide unit.'" Appx22 (citing Appx18832 at (2:37-48)). However, there is nothing in the record showing that the media manager unit has an "associated display," as required by claims

1 and 17 of the '833 patent.[5] The Programming Guide Unit has a "*graphical*" interface; the "Media Manager Unit" has only a "user input device." There is nothing about the disclosure of a "user input device" that denotes any sort of display.

The portion of Gioscia cited by the Board explains only that "the media manager unit may include a second user interface for controlling the media manager unit when disconnected from the programming guide unit." Appx18832 at (2:37-40). This passage says nothing about a display. This disclosure cannot therefore support the conclusion that Gioscia explicitly discloses a system where a second electronic device has a display.

Furthermore, as explained in Affinity Labs' briefing to the Board, the optional interface need not include a display—many interfaces exist that do not require a display. Appx17975-17976. For instance, Gioscia itself explains that the "user interface" for the system's Programming Guide Unit "*may be any device by which the listener can control the audio system.*" Appx18833 (3:45-47) (emphasis added). Where, as here, a claim element is missing from a prior art reference, the test for inherency is not whether it is possible or even likely that an element is present; it is whether the element is necessarily and always present from the disclosure of the reference. *Trintec Indus., Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292, 1295 (Fed. Cir. 2002). Inherency "may

---

[5] Because Gioscia's system lacks an "associated display," the system is incapable of any of the functionality facilitated by "software saved at the portable electronic device," including displaying a "graphical interface item" or linking "soft buttons" to audio information sources

not be established by probabilities or possibilities. The mere fact that a certain thing may result from a given set of circumstances is not sufficient." *In re Oelrich*, 666 F.2d 578, 581 (CCPA 1981).

The conclusion that Gioscia's "optional interface" need not include a display is further supported by the design of Gioscia's system, which is "preferably used as an automobile audio system." Appx18832 (2:31-33). In this preferred embodiment, Gioscia discloses that the system is designed for permanent installation—the Media Manager Unit is "generally controlled by the user interface (101) of the Programming Guide Unit" and "placed in a less visible location where more space is available such as in the car's trunk or under a seat." Appx 18831, Appx18833 (3:12-15), (3:59-4:23). In alternative embodiments, the Media Manager Unit "*may* include a second user interface for controlling the media manager unit *when disconnected from the programming guide unit*." Appx18832 (2:37-40) (emphasis added). Again, however, there is nothing in Gioscia to suggest this "second user interface" necessarily includes a display. The only functionality described as being controlled by the second user interface—"uploading and downloading of data to the media manager unit"—does not necessitate a display. Appx18833 (4:37-44). Accordingly, the record does not support the Board's determination that Gioscia anticipates claims 1 and 17 of the '833 patent.

## III. The Board Erred in its Analysis of the Hahm Reference.

### A. Hahm does not disclose "software saved at the portable electronic device" capable of facilitating the functionality of claims 1 and 17.

As set forth above, independent claims 1 and 17 of the '833 patent describe a system where one electronic device (in one embodiment, a car audio system) works with a different electronic device, a "portable electronic device" (for example, a personal digital assistant (PDA) or a cellular phone). Claim 1 further requires "software saved on the portable electronic device" that allows the portable electronic device to communicate graphical information to the second device and further allows a GUI on the second device to link "audio information sources" to "preprogrammed soft buttons." This functionality, as set forth in claims 1 and 17 claims of the '833 patent, is highlighted below.

What is claimed is:

1. An audio system, comprising:
a portable electronic device having a display, a memory, and an audio file player;
a first portion of software saved at the portable electronic device and configured to initiate a displaying of a graphical interface item on the display, the graphical interface item comprising a name associated with an audio file saved in the memory;
a mounting location on the portable electronic device that includes a physical interface configured to communicatively couple the portable electronic device to a different electronic device having an associated display; and
an other portion of software saved at the portable electronic device and configured to communicate a representation of the graphical interface item to the different electronic device via the physical interface to facilitate a displaying of the representation on the associated display, wherein the portable electronic device is configured to communicate interface information to the different electronic device in order to allow a user to view at least a partial representation of a graphical user interface that includes the graphical interface item on the associated display, wherein the graphical user interface comprises a plurality of preprogrammed soft buttons that are linked to respective audio information sources.

17. An audio system, comprising:
a portable electronic device that has a display, a memory, and a processor;
software saved at the portable electronic device and configured to direct the portable electronic device to save an audio file in the memory, to associate the audio file with a name, to include the name in a graphical menu of available content, to present the name on the display of the portable electronic device, and to communicate a collection of information comprising the name to a different electronic device that has an associated display such that a user can interact with the different electronic device: (1) to navigate through a plurality of audio files; (2) to view at least a portion of the graphical menu on the associated display, wherein the portion comprises the name; and (3) to select an available audio file for processing; and
wherein the portable electronic device is configured to communicate interface information to the different electronic device in order to allow the user to view the graphical menu on the associated display in a graphical user interface that includes a plurality of preprogramed soft buttons that are linked to respective audio information sources.

Appx18887-18888.

When reviewing the Hahm reference against claims 1 and 17 of the '833 patent, the Board determined that the "move buttons" (218 and 220, below) shown in Figure 2 of Hahm "correspond to the claimed 'preprogrammed soft buttons'." Appx21. The Board further determined that the "move buttons" are "'linked to respective audio information sources' (i.e., the audio files) inasmuch as they cause the selected file to be uploaded or downloaded."[6] *Id.*



---

[6] The Board's reasoning departs from that argued by the Examiner in his rejection. The Examiner argued that the claimed "soft button" is disclosed in Figure 2 of Hahm by the "selectable icon consisting of a small graphic along with the name of the file" located in the computer's GUI window (214). Appx17996. As set forth in Affinity Labs' briefing to the Board, the icons in window (214) are simply that, icons that identify particular MP3 files by nothing else. See Appx18429-18430.

The Board's reading fails to credit the claim requirement that the "software" that facilitates the functionality of linking "soft buttons" to audio information sources originates from the portable electronic device. *See Hockerson-Halberstadt, Inc.*, 183 F.3d at 1374 (Fed. Cir. 1999) ("'[p]roper claim construction . . . demands interpretation of the entire claim in context, not a single element in isolation").

In Hahm's system, a portable device interfaces with a PC that already has file management software installed. The management software and its associated functionality, including the functionality of the "move buttons," exist separate and apart from the portable device. This fact is confirmed by the teachings of Hahm. In the preferred embodiment, Hahm teaches that the management program is already "installed in the computer." Appx18803 (4:41-44). Indeed, "Figure 2 shows a main menu (202) of the management program displayed on a monitor of computer (200) when the management program is running *after an installation*[.]" Appx18803 (4:56-5:3) (emphasis added).

Because the management program and associated functionality shown in Figure 2 of Hahm exist independent of the portable device, Hahm's system cannot read on claims 1 and 17 of the '833 patent, which recite functionality derived from software located on the portable device.

## IV. The Board Erred in its Analysis of the Dwyer Reference.

The Board's review of the Dwyer reference and affirmance of the Examiner's rejections results from an improper inherency analysis. In relying upon the theory of

inherency, the Examiner was required to "provide a basis in fact and/or technical reasoning to reasonably support the determination that the allegedly inherent characteristic necessarily flows from the teachings of the applied prior art." *Ex Parte Levy*, 17 U.S.P.Q.2d 1461, 1464 (Bd. Pat. App. & Inter. 1990); *see also Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000) ("Invalidity by anticipation requires that the four corners of a single, prior art document describe every element of the claimed invention, either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without undue experimentation.") Inherency "may not be established by probabilities or possibilities. The mere fact that a certain thing may result from a given set of circumstances is not sufficient." *In re Oelrich*, 666 F.2d at 581. As set forth below, the record demonstrates that the Examiner's inherency analysis, and the Board's acceptance of the same, is not supported by substantial evidence.

### A.   Dwyer does not inherently disclose "a plurality of preprogrammed soft buttons that are linked to respective audio information sources."

Independent claims 1 and 17 of the '833 patent require "a different electronic device" with preprogrammed "soft buttons" that are linked to "audio information sources." In its Final Decision, the Board simply credited the Examiner's inherency analysis as to this claim element, which reasoned that the claimed "soft button" is inherently disclosed by Figure 8 of Dwyer and the disclosure of "a selectable icon consisting of a small graphic along with the name and file and other file

information…" Appx8; Appx10756

As set out in Affinity Lab's briefing before the Board, the "icons" in Figure 8 of Dwyer are neither linked to an audio source nor selectable—they are simply a list. Appx10719-10720. Figure 8, shown below, features an icon (220) that is "indicative of a voice file stored in [Dwyer's] portable recorder."



**FIG. 8**

Appx 18793, 18797 (8:35-39).

Neither the Board nor the Examiner cite to any portion of Dwyer teaching that this icon (220) is itself selectable or otherwise linked to an audio source. Dwyer teaches instead that to access a file in the portable recorder, a user must access "an item in a pull-down menu headed 'swap' (reference numeral 230, Fig. 8)." Appx18797 (8:62-67). Indeed, the Board fails to satisfy that the "soft button" is necessarily

disclosed in Dwyer, and not based on possibilities or probabilities. *See In re Oelrich*, 666 F.2d at 581 (Inherency "may not be established by probabilities or possibilities. The mere fact that a certain thing may result from a given set of circumstances is not sufficient."). The Board's inherency argument therefore lacks support in the evidence and is contrary to Federal Circuit case law. The Board's rejection based on Dwyer should be reversed.

### B. Dwyer does not inherently disclose an icon compromising a name.

Claim 1 of the '833 patent recites that the claimed "portable electronic device" is configured to display a graphical interface item, that item comprising "a name associated with an audio file saved in the memory." Appx18887. Both the examiner and the Board erroneously maintain that Dwyer inherently teaches this claim feature.

In the Right of Appeal Notice, the Examiner argued that Figure 5 of Dwyer "illustrates header information that is associated with every audio file stored on the recorder." Appx10639. Further, "[t]he header information includes title/ID data (116) denoting the title or name of the file[.]" *Id*. The Examiner then applied an inherency analysis:

> [A] displayed graphical interface item (e.g., an icon) that is representative of an audio file inherently 'comprises a name associated with the audio stored in memory,' or an equivalent file identifier. Otherwise, a user would be unable to distinguish one file from another. Selection of a desired file can only occur when a name or some equivalent unique identifier is displayed for each audio file. Those skilled in the art would have understood Dwyer's displaying of 'file icons' to necessarily include a file name or other equivalent identifier in order to differentiate various files from one another.

Appx10639. Noting that "Dwyer does not expressly disclose the details of how the audio files icons are displayed and navigated on the portable recorder," the Examiner explained that "[t]he name 222 of each of the files [shown in Figure 8] is included so that a user can select a particular file among a plurality of files." Appx10638-10639.

The Board affirmed the examiner's finding, holding that "Dwyer describes a touchscreen through which a user may interact with stored files." Appx8. "Because Dwyer describes (Fig. 5) 'Header Data,' including a title (i.e., name), associated with each file (5:16-18), we are unpersuaded that Dwyer's software is not configured to initiate displaying the title as the graphical item." *Id.*

The analysis of both the Board and the Examiner extends the inherency analysis beyond the four corners of Dwyer.

First, to the extent the inherency analysis is based upon Figure 5 of Dwyer, neither the Examiner nor the Board sufficiently explain how the "Header Data" shown in Figure 5 demonstrates a graphical interface item comprising a name associated with an audio file. While Figure 5 shows a file format including header information for a stored file, there is nothing in Dwyer to suggest that a word or group of words identifying an audio file (i.e., a name) is necessarily present, nor that such words are presented on the graphical display of a portable device. Dwyer's file icons could depict album cover art, the artist's picture, or just a color. As the Examiner explained in the Right of Appeal Notice, "[s]election of a desired file can

41

only occur when a name *or other equivalent unique identifier is displayed for each audio file.*"
Appx10639 (emphasis added). There is nothing in Dwyer to suggest that header data
necessarily features the "name" of an audio file and not some other unique identifier.
*See Trintec Indus.*, 295 F.3d at 1295 ("Inherent anticipation requires that the missing
descriptive material is "necessarily present," not merely probably or possibly present,
in the prior art.")

Second, to the extent the inherency analysis is based upon Figure 8 of Dwyer,
there is nothing in the record suggesting that the information shown in Figure 8 is
reproduced on Dwyer's portable device. Figure 8 shows a PC display. Figure 8
discloses an icon (220) and "name information" (222), showing that they are two
separate things. Appx18797 (8:35-40) ("Icons 220 in field 218 are each respectively
indicative of a voice file stored in the portable recorder. Name information indicated
at 222 corresponds to the header data component 116 (FIG. 5) for the voice files[.]")
Dwyer does not suggest, let alone explicitly disclose, that the PC display of Figure 8 is
reflective of what is displayed on Dwyer's portable device. Again, the Board does not
provide any evidence that Dwyer's disclosure necessarily discloses this claim element,
and is not based on possibilities or probabilities. *See In re Oelrich*, 666 F.2d at 581
(Inherency "may not be established by probabilities or possibilities.") Thus, Figure 8
does expressly or inherently disclose a portable electronic device configured to display
a name associated with an audio file, as claimed by the '833 patent.

Given the error set forth above, the Board's inherency analysis regarding Dwyer

should be reversed.

## V.    The Board Erred in its Analysis of the Naim and Lee References.

In determining whether a claim is invalid as obvious under 35 U.S.C. § 103, the

Examiner had to decide, from the perspective of one of ordinary skill in the pertinent

art, whether,

> the differences between the subject matter sought to be patented and the
> prior art are such that the subject matter as a whole would have been
> obvious at the time the invention was made to a person having ordinary
> skill in the art.

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 405 (2007). The Examiner is instructed to

"be aware, of course, of the distortion caused by hindsight bias and must be cautious

of arguments reliant upon ex post reasoning." *KSR*, 550 U.S. at 421; *see also Graham*,

383 U.S. at 36 (warning against the "temptation to read into the prior art the teachings

of the invention in issue" and instructing factfinders to "guard against slipping into

use of hindsight."). Furthermore, "when secondary considerations are present,

though they are not always dispositive, it is error not to consider them." *In re Kao*, 639

F.3d 1057, 1067 (Fed. Cir. 2011). Indeed, "[s]econdary considerations evidence can

establish that 'an invention appearing to have been obvious in light of the prior art

was not' and may be 'the most probative and cogent evidence in the record.'" *Apple*

*Inc. v. ITC*, 725 F.3d 1356, 1366 (Fed. Cir. 2013). This Court "has emphasized that

consideration of the objective indicia is part of the whole obviousness analysis, not

just an afterthought." *Leo Pharm. Prods. Ltd. v. Rea*, 726 F.3d 1346, 1357 (Fed. Cir.

2013).

### A.   Neither Naim nor Lee disclose a portable electronic device configured to display a graphical interface item comprising a name.

As set forth above, independent claims 1 and 17 of the '833 patent recite that the portable electronic device is configured to display a graphical interface item, that item having a name associated with an audio file. Appx18887-18888. The portable electronic device is further configured to transfer information to a "different electronic device" such that the "different electronic device" can display the graphical interface item having a name. Simply put, independent claims 1 and 17 of the '833 patent require a system capable of communicating the graphical interface item, which includes a name, from the portable device to the different electronic device. Neither Naim nor Lee disclose this functionality.

The Board's decision cites only to the Examiner's Answer at pages 9-11. There, the Examiner argued that "[t]he audio recorded by [Naim's] portable device and capable of being transferred to the PC is in digital form (see Naim, column 5:14-20) and would necessarily include identifying information such as a filename, or the like, as those skilled in the art would have expected of any type of digital file." Appx10760.[7]

---

[7] Both the Examiner and the Board determined that this claim element is disclosed by the teachings of Naim and declined to analyze Lee. *See* Appx10761 (dismissing Patent Owner arguments that Lee does not disclose sending a name from the portable device to a second device because Naim is considered to teach this

As argued on appeal to the Board, the Examiner's rationale does not comport with the disclosure of Naim. The only transfer of data from the portable device to a PC in Naim is either as to statistical information or voice recorded content. Appx18850 (11:17-22). This information need not include identifying information.

## B.   The proposed combination of Naim and Lee does not disclose a "portable electronic device" with the claimed "physical interface."

Independent claim 1, as well as claims 23 and 24 of the '833 patent recite a "mounting location" on a portable device that "includes a physical interface." Appx18887-18888. In claims 1 and 23, the "physical interface" is configured to "communicatively couple the portable electronic device to a different electronic device." *Id.* In claim 24, as shown below, the "physical interface" is further configured to couple the power supply of the portable device and a different device.

> **24**. The system of claim **23**, wherein the physical interface is configured to couple a power supply associated with the different electronic device to a local power supply of the portable electronic device.

Because "Naim does not expressly teach that audio files are transferred to and displayed on the PC," the Examiner relied upon Lee "for the teaching of connecting a remote device (PDA, cell phone, notebook, or any device capable of remote communications such as Naim's portable device), to a multimedia player[.]" Appx10643. It is undisputed that Lee teaches only *wireless* communication between a

---

functionality); Appx11. The record therefore does not support any alternative finding that this claim element is met by the teachings of Lee.

remote device and a multimedia device. *Id.* Under a proper reading of Claims 1, 23, and 24 of the '833 patent, the proposed combination of Naim and Lee does not disclose a "physical interface."

The Board determined that the claim requirement of a "physical interface" does not preclude a wireless interface formed by physical components having a mounting location on the portable device. Appx10. As the Board explained, "without regard to whether the claimed communicative coupling is wired or wireless, physical hardware is required (*e.g.*, a cable plug or radio). The mounting on the device where the physical hardware is mounted, whether referring to Naim or Lee, maps to the claimed 'mounting location.'" Appx10. The Board's reading of the claims is overly broad and does not comport with the plain language of the claims.

First, the Board's reading of the "physical interface" claim limitation is improper, as it renders the word "physical" essentially meaningless. *Stumbo v. Eastman Outdoors, Inc.*, 508 F.3d 1358, 1362 (Fed. Cir. 2007) (Court's claim construction rendered limitation superfluous, "a methodology of claim construction that this court has denounced.") The Board ignores the fact that the claimed "interface" is necessarily modified by the word "physical," and instead assumes that this limitation is met by any physical "hardware" located within the portable device. This construction ignores the fact that the term "interface" has well understood meaning in the art. Indeed, Naim actually teaches a difference between a *physical* interface ("a physical hard connector") and a *wireless* interface. *See* Appx18847 (5:27-28) ("Interface 10 can

be a physical hard connector or a wireless interface.").

Second, the Board's reading cannot be squared with claim 24's requirement of a "physical interface" configured to couple the power supplies of a portable electronic device and another electronic device. Indeed, the Board does not cite any evidence that a device could utilize wireless recharging or power. Rather, such functionality was obtained through a wired connection, *i.e.* physical. Thus, the Board's rejection based on Naim and/or Lee must be reversed.

## C.    The Board erred in disregarding Affinity Labs' evidence of commercial success.

"Secondary considerations evidence can establish that 'an invention appearing to have been obvious in light of the prior art was not' and may be 'the most probative and cogent evidence in the record.'" *Apple Inc. v. ITC*, 725 F.3d 1356, 1366 (Fed. Cir. 2013). This Court "has emphasized that consideration of the objective indicia is part of the whole obviousness analysis, not just an afterthought." *Leo Pharm. Prods.*, 726 F.3d at 1357. And "when secondary considerations are present, though they are not always dispositive, it is error not to consider them." *In re Kao*, 639 F.3d 1057, 1067 (Fed. Cir. 2011).

Commercial success of a product embodying an invention is powerful evidence of nonobviousness when "the commercial success … results from the claimed invention" and is "due to the merits of the claimed invention beyond what was readily available in the prior art." *J.T. Eaton & Co. v. Atlantic Paste & Glue Co.*, 106 F.3d 1563,

1571 (Fed. Cir. 1997). It is not necessary that the patented invention be solely responsible for the commercial success, in order for this factor to be given weight appropriate to the evidence. *Cont'l Can Co. v. Monsanto Co.*, 948 F.2d 1264, 1273 (Fed. Cir. 1991).

Here, the Board adopted the rationale of the Examiner in dismissing Affinity Labs' evidence of commercial success. Appx11. The Examiner determined that Affinity Labs' evidence of commercial success was insufficient to overcome the obviousness rejections because "the evidence presented does not tend to show that there is a strong correlation between the increase of sales and the benefits of the claimed invention." Appx10763. The Examiner further dismissed evidence demonstrating the extensive licensing success of the '833 patent at "unpersuasive." Appx10764. The Examiner's analysis, and the Board's adoption of the same, improperly discounts the Affinity Labs' commercial success evidence.

First, it was improper for the Examiner to wholly dismiss record evidence demonstrating extensive and financially significant licensing activity. *See In re Sernaker*, 702 F.2d 989, 997 (Fed. Cir. 1983) (reversing Board of Appeals rejection where Board failed to consider extensive licensing activity and millions of dollars of sales). Here, the record contains evidence that Affinity Labs has licensed the '833 patent and its siblings to a number of entities for an amount exceeding $50 million. Appx10488-10489.

Second, the Examiner's analysis improperly requires a showing of nexus beyond that required for consideration of secondary considerations evidence. It is not necessary that the patented invention be solely responsible for the commercial success in order for this factor to be given weight appropriate to the evidence. *Cont'l Can Co.*, 948 F.2d at 1273. Affinity Labs submitted evidence demonstrating that a significant commercial market—a $25 billion industry—developed around in-vehicle device integration, which was driven by consumer demand for connectivity. Appx10731-10732 (citing Appx17323-17324). This connectivity and device interoperability is precisely what is covered by the claims of the '833 patent. Indeed, the trial judge in the *BMW* litigation explicitly noted the value of Affinity Labs' strong evidence of long-felt need in the industry. *See* Appx10730-10731 (citing Appx17260) (identifying "fairly strong testimony on secondary indicia of non-obviousness" based on the amount of time taken to develop the technology).

Given the Board's erroneous examination of the Naim and Lee references, as well as Affinity Labs' secondary consideration of nonobviousness evidence, the Board's analysis of Naim and Lee is not supported by substantial evidence. The Board's determination that claims 1-27 and new claims 37-42, 45, and 45 of the '833 patent are obvious over Naim and Lee should therefore be reversed.

## CONCLUSION AND RELIEF SOUGHT

I.    Reversal of the Board's Decisions affirming the Examiner's rejections and ultimate findings that all claims of the '833 patent are unpatentable; and

II.    Remand to the Board for termination of the proceeding.


Dated: January 25, 2016                     Respectfully submitted,

                                            /s/William E. Manske
                                            Ryan M. Schultz
                                            William E. Manske
                                            **ROBINS KAPLAN LLP**
                                            800 LaSalle Avenue, Suite 2800
                                            Minneapolis, MN 55402-2015
                                            Tel.: (612) 349-8500

                                            *Attorneys for Patent Owner-Appellant*
                                            *Affinity Labs of Texas, LLC*

# ADDENDUM

# TABLE OF CONTENTS
# TO ADDENDUM

<u>Pages</u>

PTAB Decision on Appeal ['1264/'0333] ..................................................... A1-13

PTAB Decision on Appeal ['1223] ............................................................ A14-24



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 95/001,223 | 09/22/2009 | 7324833 | AFF.0004B2US | 1290 |

21906      7590      06/30/2015
TROP, PRUNER & HU, P.C.
1616 S. VOSS ROAD, SUITE 750
HOUSTON, TX 77057-2631

| EXAMINER |
|---|
| LAROSE, COLIN M |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 06/30/2015 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

Appx1

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

APPLE INC.,
Third Party Requester and Respondent

v.

AFFINITY LABS OF TEXAS, LLC,
Patent Owner and Appellant
_____

Appeal 2015-004281
Reexaminations 95/001,264 and 90/010,333 (merged)[1]
United States Patent 7,324,833 B2[2]
Technology Center 3900
_____

Before STEPHEN C. SIU, JEREMY J. CURCURI, and
IRVIN E. BRANCH, *Administrative Patent Judges*.

BRANCH, *Administrative Patent Judge*.

_____

[1] On June 14, 2010, three pending reexamination proceedings (90/010,333, 95/001,223, and 95/001,264) were merged into the instant reexamination. Decision, *sua sponte*, To Merge Reexamination Proceedings (June 14, 2010) 2–3. Subsequently, on February 22, 2013, the 95/001,223 reexamination was severed from the instant proceeding. Decision on Petitions (Feb. 22, 2013) 2–3.

[2] This patent (hereinafter "'833 patent") issued to Russell W. White, et al., on January 29, 2008, based on Application 10/947,755, filed on September 23, 2004. The '833 patent is the second in a chain of U.S. applications beginning with Application 09/537,812 (now Patent 7,187,947), filed on March 28, 2000. '833 patent 1:6–9.

Appeal 2015-004281
Patent 7,324,833 B2
Merged Reexaminations 95/001,264 and 90/010,333

## DECISION ON APPEAL[3]

Patent Owner appeals the Examiner's decision to reject original claims 1–27 and new claims 37–42, 45, and 46, added during reexamination. PO App. Br. 10–24.  Claims 28–36, 43, 44, and 47–49 are confirmed, patentable, or objected to.  RAN 1.

We have jurisdiction under 35 U.S.C. §§ 6, 134, and 315.

We affirm the Examiner's decision that claims 1–27 and new claims 37–42, 45, and 46 are unpatentable over the prior art.


## I. STATEMENT OF THE CASE

*A.  Related Litigation and Reexamination Appeals*

We are informed by Patent Owner of the related proceedings listed in Patent Owner's Appeal Brief.  PO App. Br. 3 and Appendix XI.

*B.  These Merged Reexamination Proceedings*

The original '833 patent includes claims 1–35, of which claims 1 and 17 are independent claims.  Claims 37–42, 45, and 46 were added by amendment and depend from claim 1 or claim 17.

---

[3] Throughout this decision, we refer to: Request for *Ex Parte* Reexamination (control no. 90/010,333 "Request 1"), filed November 7, 2008; Third Party Request for *Inter Partes* Reexamination (control no. 95/001,264, "Request 2") filed November 13, 2009; Action Closing Prosecution ("ACP"), mailed November 5, 2012; Right of Appeal Notice ("RAN"), mailed September 17, 2013; Patent Owners' Appeal Brief ("PO App. Br.") filed, December 13, 2013; Examiner's Answer ("Ans."), mailed September 10, 2014; and Patent Owner Rebuttal Brief ("PO Reb. Br."), filed November 10, 2014.

Appeal 2015-004281
Patent 7,324,833 B2
Merged Reexaminations 95/001,264 and 90/010,333

*C. The Rejections Entered by the Examiner*

Patent Owner appeals the Examiner rejecting the claims as follows (PO App. Br. 4–5; *accord* Ans. 2–4; RAN 58–64):

Claims 1, 2, 6, 9, 13, 14, 16, 17, 21, 23, and 27 under § 102(a) and § 102(e) over Dwyer[4] (Ground A).

Claims 4, 7, 10, 12, 15, 18, 19, 22, 24, and 26 under § 103(a) over Dwyer and knowledge of a person of ordinary skill (Ground B).

Claims 3, 5, 20, and 25 under § 103(a) over Dwyer and Lee[5] (Ground C).

Claim 25 under § 103(a) over Dwyer and Rio 500[6] (Ground D).

Claims 7, 12, and 24 under § 103(a) over Dwyer and Schulhof[7] (Ground F).

Claims 15 and 22 under § 103(a) over Dwyer and Treyz[8] (Ground H).

Claims 4 and 18 under § 103(a) over Dwyer and Naim[9] (Ground I).

Claims 8, 11, and 19 under § 103(a) over Dwyer and Looney[10] (Ground J).

---

[4] Dwyer et al.          U.S. 6,671,567 B1      Dec. 30, 2003 ("Dwyer")
[5] Lee et al.            U.S. 6,728,531 B1      Apr. 27, 2004 ("Lee")
[6] Rio 500, *Getting Started Guide for Windows® 98 and Machintosh® OS 8.6,* (1999) ("Rio 500")
[7] Schulhof et al.       U.S. 5,557,541        Sept. 17, 1996 ("Shulhof")
[8] Treyz et al.          U.S. 6,526,335 B1      Feb. 25, 2003 ("Treyz")
[9] Naim                  U.S. 6,694,200 B1      Feb. 17, 2004
[10] Looney et al.        U.S. 6,232,539 B1      May 15, 2001 ("Looney")

3

Appeal 2015-004281
Patent 7,324,833 B2
Merged Reexaminations 95/001,264 and 90/010,333

Claims 1–6, 8–11, 13, 14, 16–21, 23, 25, and 26 under § 103(a) over Naim and Lee (Ground K).

Claims 7, 12, and 24 under §103(a) over Naim, Lee, and knowledge of a person of ordinary skill (Ground L).

Claims 7, 12, and 24 under §103(a) over Naim, Lee, and Schulhof (Ground M).

Claims 15 and 22 under §103(a) over Naim, Lee, and Treyz (Ground N).

Claim 25 under § 103(a) over Naim, Lee, and Rio 500 (Ground O).

Claims 39 and 45 under § 103(a) over Dwyer and Lee.

Claims 37–42, 45, and 46 under § 103(a) over Naim and Lee.

*E.  The Subject Matter Described in the '833 Patent*

The '833 patent relates to coupling a first electronic device, such as a portable MP3 player, and a second electronic device, such as a car audio system, so that content from the first device is playable via the second. Abstract.

*E.  The Claims on Appeal*

Claim 1, which is representative of the independent claims, reads as follows:

1.    An audio system, comprising:
       a portable electronic device having a display, a memory, and an audio file player;

4

**Appx5**

Appeal 2015-004281
Patent 7,324,833 B2
Merged Reexaminations 95/001,264 and 90/010,333

a first portion of software saved at the portable electronic device and configured to initiate a displaying of a graphical interface item on the display, the graphical interface item comprising a name associated with an audio file saved in the memory;

a mounting location on the portable electronic device that includes a physical interface configured to communicatively couple the portable electronic device to a different electronic device having an associated display; and

an other portion of software saved at the portable electronic device and configured to communicate a representation of the graphical interface item to the different electronic device via the physical interface to facilitate a displaying of the representation on the associated display, wherein the portable electronic device is configured to communicate interface information to the different electronic device in order to allow a user to view at least a partial representation of a graphical user interface that includes the graphical interface item on the associated display, wherein the graphical user interface comprises a plurality of preprogrammed soft buttons that are linked to respective audio information sources.

## II. ISSUES

Patent Owner's arguments (App. Br. 10–24; PO Reb. Br. 2–5) raise the following issues:

5

Appeal 2015-004281
Patent 7,324,833 B2
Merged Reexaminations 95/001,264 and 90/010,333

1. Under 35 U.S.C. § 102, has the Examiner erred by finding that Dwyer describes the limitation that include 1) an icon comprising a name, and 2) preprogramed soft buttons that are linked to respective audio information sources?

2. Under 35 U.S.C. § 103, has the Examiner erred by finding that the claims are obvious over combinations that include Naim and Lee?

3. Does Patent Owner's evidence of commercial success overcome the Examiner's *prima facie* case that the claims are obvious?

III. ANALYSIS

*A. Rejections over Dwyer*

Patent Owner argues the Examiner erred in rejecting claim 1 over Dwyer because Dwyer does not describe "a graphical interface item [on a display of a portable electronic device] comprising a name associated with an audio file saved in the memory" as recited in claim 1. PO App. Br. 10–12; PO Reb. Br. 2–3. Specifically, Patent Owner argues the Examiner erred because there is no disclosure that a displayed icon necessarily includes a name, or title, as part of the icon, or that a name is "always" included with the file icon. App. Br. 10–11. Patent Owner argues essentially that the Examiner's inherency reasoning (RAN 6 ("Dwyer's 'file icons' that are displayed to a user are representative of audio files that are stored on Dwyer's portable digital recorder, and they necessarily include 'a name associated with the file.'")) is erroneous because the allegedly missing

6

Appeal 2015-004281
Patent 7,324,833 B2
Merged Reexaminations 95/001,264 and 90/010,333

limitation is not "necessarily" present. *See In re Robertson*, 169 F.3d 743 (Fed. Cir. 1999). App. Br. 10–11; PO Reb. Br. 2.

We begin by noting that the argued limitation does not require displaying "a name associated with an audio file" but instead recites software "configured to initiate displaying of a graphical interface item," which graphical interface item comprises a name. Next, we note that Dwyer describes a touchscreen through which a user may interact with stored files. Dwyer 4:66–5:3. *Accord* Request Claim Chart, Exhibit CC-A 2. Hence, we are unpersuaded that Dwyer does not describe displaying a graphical interface item specific to each file to thereby allow the user to interact with the file. Moreover, because Dwyer describes (Fig. 5) "Header Data," including a title (i.e., name), associated with each file (5:16–18), we are unpersuaded that Dwyer's software is not configured to initiate displaying the title as the graphical item. Accordingly, we are unpersuaded that Dwyer does not describe software configured to initiate a displaying of a graphical interface item on the display, the graphical interface item comprising a name associated with an audio file saved in the memory.

We also are unpersuaded that Dwyer does not describe the claim 1 limitation of a graphical user interface that includes "a plurality of preprogrammed soft buttons that are linked to respective audio information sources," for at least the reasons proposed by Requester and adopted by the Examiner. Request Claim Chart, Exhibit CC-A 4–5; RAN 7–8.

We are unpersuaded that the Examiner improperly concluded that claim 24 is obvious over Dwyer and the knowledge of one skilled in the art.

7

Appeal 2015-004281
Patent 7,324,833 B2
Merged Reexaminations 95/001,264 and 90/010,333

*See* PO App. Br. 20–21; PO Reb. Br. 4. The Examiner found that Dwyer discloses a USB (Universal Serial Bus) interface (Ans. 11–13 (citing Dwyer 10:61–63) and that it would have been widely known at the time of Patent Owner's invention that "USB interfaces are operative to couple the power supplies of connected devices in order to distribute power." *Id.* at 12. We see no error.

In response to Patent Owner's challenge that the Examiner had improperly relied on "Official Notice," the Examiner responded by citing the Universal Serial Bus Specification ("USB Spec"), Revision 1.1 (September 23, 1998) at Chapter 7. *Id.* To the extent Patent Owner now argues error because the Examiner has improperly issued a rejection based on new grounds (PO Reb. Br.), we note that the issue is not properly before us because whether prosecution should be reopened in view of a new ground of rejection in an Examiner's Answer is a matter to be decided by petition, not appeal. *See* 37 C.F.R. § 1.181 or 1.182.

Patent Owner's argument that the secondary references cited with Dwyer against other claims fail to overcome the deficiencies of Dwyer (PO App. Br. 12) are unavailing because we are not persuaded of deficiencies with respect to Dwyer.

Patent Owner otherwise does not argue with particularity the remaining rejections that include Dwyer. Accordingly, based on the record before us, we are unpersuaded of error in the Examiner's decision to reject claims 1–27 and new claims 39 and 45 as anticipated by Dwyer and/or obvious over combinations that include Dwyer.

Appeal 2015-004281
Patent 7,324,833 B2
Merged Reexaminations 95/001,264 and 90/010,333

*B. Rejections over combinations that include Naim and/or Lee*

Patent Owner argues that, because the subject matter of Naim and Lee was considered during original prosecution, no substantial new question of patentability is raised by the obvious rejections over Naim and Lee.  PO App. Br. 13–16.  For at least the reasons stated by the Examiner (Ans. 7–8), we disagree.  We note specifically the Examiner's finding that "there is no indication in the prosecution history of the '833 patent suggesting that the examiner ever considered the *combination* of Naim and Steele [which is nearly identical to Lee] as a basis of unpatentability."  *Id.* at 7

Regarding the claim 1 limitation "a mounting location on the portable electronic device that includes a physical interface configured to communicatively couple the portable electronic device to a different electronic device having an associated display," Patent Owner argues that Naim's and Lee's respective teachings of wireless interfaces negates their applicability to the claimed "physical interface."  PO App. Br. 16–17.  *See also* PO Reb. Br. 3–4.  We disagree.  Instead, we agree with the Examiner that the claim does not preclude a wireless interface formed by physical components having a mounting location on the portable device.  *See* Ans. 8–9.  In other words, without regard to whether the claimed communicative coupling is wired or wireless, physical hardware is required (e.g., a cable plug or a radio).  The location on the device where the physical hardware is mounted, whether referring to Naim or Lee, maps to the claimed "mounting location."  Hence, the mounting location "includes a physical interface

9

Appeal 2015-004281
Patent 7,324,833 B2
Merged Reexaminations 95/001,264 and 90/010,333

configured to communicatively couple the portable electronic device to a different electronic device having an associated display." We are, therefore, unpersuaded of error for at least the reasons stated by the Examiner. *Id.*

Patent Owner argues error because neither Naim nor Lee discloses a portable device sending a graphical representation comprising a name to a different device, as required by claim 1. PO App. Br. 17–20; PO Reb. Br. 4. For at least the reasons stated by the Examiner (Ans. 9–11) we are unpersuaded of error.

Patent Owner's argument that the secondary references fail to overcome the deficiencies of Naim (PO App. Br. 21) are unavailing because we are not persuaded of deficiencies with respect to Naim.

We also disagree with Patent Owner that the Examiner erred by failing to consider Patent Owner's evidence of non-obviousness. PO App. Br. 22–24. It is clear that the Examiner considered the evidence but found it unpersuasive. *See, e.g.*, Ans. 13–14. For at least the reasons stated by the Examiner (*id.*), Patent Owner has not persuaded us that the Examiner's decision, that the evidence of non-obviousness failed to overcome the obviousness rejection, was erroneous.

Patent Owner does not argue separately with particularity the remaining rejections that include Naim and/or Lee. Accordingly, based on the record before us, we are unpersuaded of error in the Examiner's decision to reject claims 1–27 and new claims 37–42, 45, and 46 as obvious over combinations that include Naim and/or Lee.

Appeal 2015-004281
Patent 7,324,833 B2
Merged Reexaminations 95/001,264 and 90/010,333

## VII. DECISION

The Examiner's decision that claims 1–27 and new claims 37–42, 45, and 46 are unpatentable over the prior art is affirmed.

In the event neither party files a request for rehearing within the time provided in 37 C.F.R. § 41.79, and this decision becomes final and appealable under 37 C.F.R. § 41.81, a party seeking judicial review must timely serve notice on the Director of the United States Patent and Trademark Office. *See* 37 C.F.R. §§ 90.1 and 1.983.

<u>AFFIRMED</u>

11

Appeal 2015-004281
Patent 7,324,833 B2
Merged Reexaminations 95/001,264 and 90/010,333

For Patent Owner:

TROP, PRUNER & HU, P.C.
1616 S. VOSS ROAD, SUITE 750
HOUSTON, TX 77057-2631


For Third Party Requesters:

KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET, FOURTEENTH FLOOR
IRVINE, CA 92614

12

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

APPLE INC.,
Third Party Requester

v.

AFFINITY LABS OF TEXAS, LLC,
Patent Owner

_____

Appeal 2015-006122
Reexaminations 95/001,223[1]
United States Patent 7,324,833 B2[2]
Technology Center 3900

_____

Before STEPHEN C. SIU, JEREMY J. CURCURI, and
IRVIN E. BRANCH, *Administrative Patent Judges.*

BRANCH, *Administrative Patent Judge.*

DECISION ON APPEAL[3]

_____

[1] On June 14, 2010, three pending reexamination proceedings (90/010,333, 95/001,223, and 95/001,264) were merged. Decision, *sua sponte*, To Merge Reexamination Proceedings (June 14, 2010) 2–3. Subsequently, on February 22, 2013, the 95/001,223 reexamination was severed into the instant proceeding. Decision on Petitions (Feb. 22, 2013) 2–3.

[2] This patent (hereinafter "'833 patent") issued to Russell W. White, et al., on January 29, 2008, based on Application 10/947,755, filed on September 23, 2004. The '833 patent is the second in a chain of U.S. applications beginning with Application 09/537,812 (now Patent 7,187,947), filed on March 28, 2000. '833 patent 1:6–9.

Appeal 2015-006122
Patent 7,324,833 B2
Reexamination No. 95/001,223

Patent Owner appeals the Examiner's decision to reject claims 1–5, 8–20, and 22–27.  Claims 6, 7, 21, 28–35, and new claims 36–49 are not on appeal.  PO App. Br. 4.

We have jurisdiction under 35 U.S.C. §§ 6, 134, and 315.

We affirm the Examiner's decision that claims 1–5, 8–20, and 22–27 are unpatentable over the prior art.

## I. STATEMENT OF THE CASE

*A.  Related Litigation and Reexamination Appeals*

We are informed by Patent Owner of the related proceedings listed in Patent Owner's Appeal Brief.  PO App. Br. 3 and Appendix X.

*B. The Rejections Entered by the Examiner*

Patent Owner appeals the Examiner rejecting the claims as follows (PO App. Br. 9–17; *accord* Ans. 2–3; RAN 25–42):

> Claims 1, 2, 8–11, 13, 14, 16, 17, 23, and 25–27 under § 102(a) over
>> European Patent Application No. EP 0 982 732 A1 published
>> March 1, 2000 to Hahm (Ground A).

---

[3] Throughout this decision, we refer to: Third Party Request for *Inter Partes* Reexamination (control no. 95/001,223, "Request") filed September 22, 2009; Action Closing Prosecution ("ACP"), mailed October 5, 2012; Right of Appeal Notice ("RAN"), mailed August 15, 2013; Patent Owners' Appeal Brief ("PO App. Br.") filed, December 19, 2013; Examiner's Answer ("Ans."), mailed September 3, 2014; and Patent Owner Rebuttal Brief ("PO Reb. Br."), filed November 3, 2014.

Appeal 2015-006122
Patent 7,324,833 B2
Reexamination No. 95/001,223

> Claims 1–3, 5, 8–17, 19, 20, 22–25, and 27 under § 102(b) over U.S.
> Patent No. 6,407,750 B1 issued June 18, 2002 to Gioscia
> (Ground B).[4]

> Claims 3–5, 18, and 20 under § 103(a) over Hahm in view of U.S.
> Patent No. 6,559,773 B1 issued May 6, 2003 to Berry (Ground
> L).

> Claims 3–5, 18, 20, and 22 under § 103(a) over Hahm in view of *The
> Network Vehicle - a Glimpse Into the Future of Mobile Multi-
> Media* to Lind et al., IEEE (1998) (Ground M).

> Claims 15 and 22 under § 103(a) over Hahm in view of Gioscia
> (Ground O).

---

[4] Patent Owner correctly points out that Gioscia does not qualify as prior art under 35 U.S.C. §102(b). PO App. Br. 12. Some claims were initially rejected under 102(b) over Gioscia, but because the '833 patent was later determined to have an earlier priority date (ACP 5–9), the rejection under 102(b) no longer applies. Patent Owner raised the issue in Patent Owner's Appeal Brief and the Examiner responded to the issue in the Examiner's Answer (Ans. 7 (noting a rejection under 102(e) is not materially different than a rejection under 102(b) and stating "analysis of the prior art vis-à-vis the claims remains the same") but failed to restate in the Grounds of Rejection section that the claims stand rejected under 35 U.S.C. § 102(e). *Id.* at 3. The Examiner's response remains substantively unrebutted and Patent Owner did not timely petition. Hence, we analyze the anticipation rejections over Gioscia as if the claims stand rejected under 35 U.S.C § 102(e) and deem the Examiner's failure to restate the rejection correctly an administrative oversight. We address Patent Owner's ensuing procedural arguments *infra*.

3

Appeal 2015-006122
Patent 7,324,833 B2
Reexamination No. 95/001,223

> Claim 25 under § 103(a) over Hahm in view of U.S. Patent No.
>
> > 6,255,961B1 issued July 3, 2001 to Van Ryzin (Ground P).
>
> Claim 26 under § 103(a) over Gioscia in view of Berry (Ground Q).
>
> Claim 25 under § 103(a) over Gioscia in view of Van Ryzin (Ground
>
> > S).

### C. The Subject Matter Described in the '833 Patent

The '833 patent relates to coupling a first electronic device, such as a portable MP3 player, and a second electronic device, such as a car audio system, so that content from the first device is playable via the second. Abstract.

### D. The Claims on Appeal

Claim 1, which is representative of the independent claims, reads as follows:

1.  An audio system, comprising:

    a portable electronic device having a display, a memory, and an audio file player;

    a first portion of software saved at the portable electronic device and configured to initiate a displaying of a graphical interface item on the display, the graphical interface item comprising a name associated with an audio file saved in the memory;

    a mounting location on the portable electronic device that includes a physical interface configured to communicatively couple the

4

**Appx17**

Appeal 2015-006122
Patent 7,324,833 B2
Reexamination No. 95/001,223

portable electronic device to a different electronic device having an

associated display; and

an other portion of software saved at the portable electronic

device and configured to communicate a representation of the

graphical interface item to the different electronic device via the

physical interface to facilitate a displaying of the representation on the

associated display, wherein the portable electronic device is configured

to communicate interface information to the different electronic device

in order to allow a user to view at least a partial representation of a

graphical user interface that includes the graphical interface item on

the associated display, wherein the graphical user interface comprises a

plurality of preprogrammed soft buttons that are linked to respective

audio information sources.


## II. ISSUES

Patent Owner's arguments (App. Br. 9–17; PO Reb. Br. 2–6) raise the

following issues:

1. Under 35 U.S.C. § 102, has the Examiner erred by finding that Hahm

   describes

> a first portion of software saved at the portable
> electronic device and configured to initiate a displaying of
> a graphical interface item on the display, the graphical
> interface item comprising a name associated with an
> audio file saved in the memory

5

**Appx18**

Appeal 2015-006122
Patent 7,324,833 B2
Reexamination No. 95/001,223

as recited in claim 1 and commensurately recited in claim 17; and

>   software saved at the portable electronic device and
>   configured to direct the portable electronic device . . .
>   such that a user can interact with the different electronic
>   device:
>   . . .
>   (3) to select an available audio file for processing

as recited in claim 17.

2. Under 35 U.S.C. § 102, has the Examiner erred by finding that Gioscia describes

>   software saved at the portable electronic device and
>   configured . . . to communicate a collection of
>   information comprising the name to a different electronic
>   device that has an associated display such that a user can
>   interact with the different electronic device:
>   . . .
>   (2) to view at least a portion of the graphical menu
>   on the associated display [and]
>   wherein the portable electronic device is
>   configured to communicate interface information to the
>   different electronic device in order to allow the user to
>   view the graphical menu on the associated display

as recited in claim 17.

3. Does Patent Owner's evidence of commercial success overcome the Examiner's *prima facie* case that certain claims are obvious?

6

**Appx19**

Appeal 2015-006122
Patent 7,324,833 B2
Reexamination No. 95/001,223

## III. ANALYSIS

### A. Preliminary Issues

Patent Owner argues that prosecution must be reopened due to the Examiner introducing new grounds of rejection in the RAN. PO App. Br. 9, 12. The Examiner initially rejected certain claims under 35 U.S.C. § 102(b) over Hahm, but now rejects those claims under 35 U.S.C. § 102(a) over Hahm. *Id.*; *accord* RAN 4. Similarly, Patent Owner argues that prosecution must be reopened so that Patent Owner can address a rejection of certain claims under 35 U.S.C. § 102(e) over Gioscia. PO App. Br. 12; *see* FN 4 *supra*. Patent Owner also argues that this reexamination proceeding can no longer be maintained in view of other proceedings having been concluded. PO Reb. Br. 2–3.

These issues are not properly before us. They are issues to be decided by petition, not appeal. *See* 37 CFR 1.182 and 35 U.S.C. § 312(b). Accordingly, we will not address them further.

### B. Rejections over Hahm

Patent Owner argues the Examiner erred in rejecting claims 1 and 17 over Hahm because Hahm does not disclose "wherein the graphical user interface comprises a plurality of preprogrammed soft buttons that are linked to respective audio information sources," as recited in claim 1 and commensurately recited in claim 17. PO App. Br. 10–11; PO Reb. Br. 3–4. We are unpersuaded of error.

7

**Appx20**

Appeal 2015-006122
Patent 7,324,833 B2
Reexamination No. 95/001,223

Hahm's Figure 2 depicts a user interface for managing content between a computer and an MP3 player. Hahm ¶ 24. Included in the interface are two "move buttons" (Fig. 2, ref. nos. 218 and 220), which are usable for uploading and downloading selected files from the computer to the MP3 player. *Id.* at ¶ 24; *accord* Request 26–27.

The move buttons correspond to the claimed "preprogrammed soft buttons" and are "linked to respective audio information sources" (i.e., the audio files) inasmuch as they cause the selected file to be uploaded or downloaded. We also find that the broadest reasonable interpretation of claim 17's "processing" includes uploading and downloading of files, such as Hahm's uploading and downloading.

In view of the foregoing, we are unpersuaded that Hahm does not describe the claimed preprogrammed soft buttons of claims 1 and 17 or the processing of claim 17. Because Patent Owner does not otherwise argue Ground A, we affirm the Examiner's decision to reject claims 1, 2, 8–11, 13, 14, 16, 17, 23, and 25–27 under § 102 over Hahm.

*C. Rejections over Gioscia*

Patent Owner argues that the Examiner erred in rejecting claims 1 and 17 over Gioscia because Gioscia does not describe a system with two displays. PO App. Br. 13–14; PO Reb. Br. 4–5. We are unpersuaded of error.

We begin by noting that claims 1 and 17 do not affirmatively recite a system having two displays but instead recite software for interacting with a

8

**Appx21**

Appeal 2015-006122
Patent 7,324,833 B2
Reexamination No. 95/001,223

different device having a display, an interface to the second device having a
display, and/or communicating information to a second device having a
display. Patent Owner has not persuasively argued that Gioscia does not
disclose software capable of interacting with a different device having a
display and/or communicating information through an interface to a different
device having a display. Gioscia discloses that its programming guide unit
has a display and is interfaced to a media manager unit. Gioscia 2:33–35 and
"Figure." The media manager unit may include a second user interface, and
the media manager unit is "controlled by the programming guide unit." *Id.* at
2:37–48. Hence, we are not persuaded of error in the Examiner's
determination that claim 17 reads on this description.

In view of the foregoing, we are unpersuaded that Giosica does not
describe a system having two displays as recited in claim 17. Because Patent
Owner does not otherwise argue Ground B, we affirm the Examiner's
decision to reject claims 1–3, 5, 8–17, 19, 20, 22–25, and 27 under § 102
over Giosica.

### D. Secondary Considerations

We also disagree with Patent Owner that the Examiner erred by failing
to consider Patent Owner's evidence of non-obviousness. PO App. Br. 15–
17; Reb. Br. 5–6. It is clear that the Examiner considered the evidence but
found it unpersuasive. *See, e.g.*, Ans. 8–10. For at least the reasons stated by
the Examiner (*id.*), Patent Owner has not persuaded us that the Examiner's

9

**Appx22**

Appeal 2015-006122
Patent 7,324,833 B2
Reexamination No. 95/001,223

decision, that the evidence of non-obviousness failed to overcome the
obviousness rejection, was erroneous.

Patent Owner does not argue with particularity the remaining
rejections (Grounds L, M, O, P, Q, and S) except to say that the secondary
references fail to cure the shortcomings of Hahm and Gioscia (PO App. Br.
12, 14), which we do not find. Accordingly, based on the record before us,
we are unpersuaded of error in the Examiner's decision to reject claims 1–5,
8–20, and 22–27, all appealed rejections.

## VII. DECISION

The Examiner's decision that claims 1–5, 8–20, and 22–27 are
unpatentable over the prior art is affirmed.

In the event neither party files a request for rehearing within the time
provided in 37 C.F.R. § 41.79, and this decision becomes final and
appealable under 37 C.F.R. § 41.81, a party seeking judicial review must
timely serve notice on the Director of the United States Patent and
Trademark Office. *See* 37 C.F.R. §§ 90.1 and 1.983.

<u>AFFIRMED</u>

10

**Appx23**

Appeal 2015-006122
Patent 7,324,833 B2
Reexamination No. 95/001,223

For Patent Owner:

TROP, PRUNER & HU P.C.
1616 S. VOSS ROAD
SUITE 750
HOUSTON, TX 77057-2631


For Third Party Requesters:

KENYON & KENYON LLP
ONE BROADWAY
NEW YORK, NY 10004

**Appx24**

# CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B). The brief contains 9,893 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

The undersigned also hereby certifies that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in 14-point Garamond type style.

As permitted by Federal Rule of Appellate Procedure 32(a)(7)(C)(i), the undersigned has relied upon the word count of this word processing system in preparing this certificate.

Dated: January 25, 2016              By: /s/ William E. Manske
                                         William E. Manske
                                         *Counsel for Patent Owner-Appellant*

# PROOF OF SERVICE

I hereby certify that on January 25, 2016, the foregoing APPELLANT AFFINITY LABS OF TEXAS, LLC'S OPENING BRIEF was filed with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit using the appellate CM/ECF system which pursuant to Federal Rule of Appellate Procedure 25(c)(2) and Federal Circuit ECF-6(A) constitutes service on all parties represented by attorneys who have registered for the CM/ECF system, and that a copy was served on counsel of record for Intervenor via e-mail:

Thomas W. Krause, Esq., Acting Solicitor
Email: thomas.krause@uspto.gov
Fax: 571-273-0373
United States Patent and Trademark Office
Office of the Solicitor

Joseph Matal
Email: joseph.matal@uspto.gov
United States Patent and Trademark Office
Office of the Solicitor

Robert McBride, Associate Solicitor
Email: robert.mcbride@uspto.gov]
United States Patent and Trademark Office
Office of the Solicitor

Scott Weidenfeller,
Email: scott.weidenfeller@uspto.gov
United States Patent and Trademark Office
Office of the Solicitor

Dated: January 25, 2016              By: /s/William E. Manske
                                     William E. Manske
                                     *Counsel for Patent Owner-Appellant*